UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

ALONZO ROSS,

       Plaintiff,

      v.

JOSHUA M. REINHARDT;
TYLOR V. HILTON; DAVID J.
PANGALLO; CHRISTOPHER S.
MUNIAK; DR. DAVID WILLIAMS,
LYNN BUSCH, RN; CAPT. MEEGAN;
C.O. KELLER,[1]

       Defendants.

_____

      24-CV-439 (JLS)

## DECISION AND ORDER

_Pro se_ plaintiff Alonzo Ross is incarcerated at the Green Haven Correctional

Facility.  He filed this action seeking relief under 42 U.S.C. § 1983.  Dkt. 1.

Ross also filed a motion for leave to proceed _in forma pauperis_ ("IFP")

(Dkt. 6), with the required affirmation, certification, and authorization (Dkt. 5).

Because Ross meets the requirements of 28 U.S.C. § 1915(a) and filed the required

documents, he is granted permission to proceed IFP.  The Court, therefore, screens

his complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).

_____

[1] The Clerk of Court is requested to amend the docket as set forth above to reflect
Defendants' names as written in Dkt. 1, at 2–5.

For the reasons below, the claims against Dr. David Williams and Lynn Busch, RN, in their official capacities will proceed to service; all other official capacity claims are dismissed, without leave to amend. Ross's retaliation and equal protection claims will proceed to service upon Tylor V. Hilton. His excessive force claim will proceed to service upon Hilton, Joshua M. Reinhardt, and David J. Pangallo. His inadequate medical care claim will proceed to service upon Williams and Busch.[2] His procedural due process claims against Sergeant Muniak and Capt. Meegan, as well as any claims against C.O. Keller, are dismissed with leave to amend. Any amended complaint is due by **August 3, 2026**.

## DISCUSSION

### I.   Legal Standard

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). A court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b)(1)–(2).

---

[2] These conclusions relate to the Court's screening of Ross's complaint only. The Court expresses no opinion about whether his allegations would be sufficient to survive a motion to dismiss or a motion for summary judgment.

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, "unless [it] can rule out any possibility, however unlikely . . . , that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (citation modified). But a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive[] . . . it is not an abuse of discretion to deny leave to amend").

When evaluating a complaint, a court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases"). A court must "construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), but even *pro se* pleadings must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

## II.    Ross's Allegations[3]

At approximately 3:30 p.m. on July 29, 2022, Ross exited his cell in A-Block, 8 Company, to go to the facility clinic to receive his daily insulin injection. Dkt. 1, at 9 ¶ 1. When he returned, Ross "noticed a large number of officers" he does not ordinarily encounter, "all staring at [him] in a threatening manner." *Id.* ¶ 2. Reinhardt was waiting for him and indicated with his body language that he wanted Ross to "go straight to [his] cell." *Id.* ¶ 3. Ross did, and Reinhardt followed him. *Id.* Hilton and Pangallo were waiting for Ross at the front of his cell; each had a "very intimidating facial expression." *Id.* ¶ 4.

It was clear to Ross that they had "trashed" his cell. *Id.* ¶ 5. All of his active legal materials were "all over the place" and had "chewing tobacco freshly spit" on them. *Id.* There was a large hole in his wash bucket, his TV screen was smashed, and his personal photos were in his toilet. *Id.*

Knowing that all this had been done to "provoke" him, Ross humbly asked if he could "please keep the wash bucket without the hole and . . . Pangallo said hurry up and switch and lock in." *Id.* ¶ 6.

When Ross tried to close his gate, Hilton grabbed it, opened it, and entered the cell. *Id.* ¶ 7. Without warning, Hilton began brutally punching Ross in the face and head. *Id.* Reinhardt followed Hilton into the cell, and he too punched Ross in the head. *Id.*

---

[3] The Court accepts Ross's allegations as true for purposes of screening his complaint. Page references to docket entries are to the numbering automatically generated by CM/ECF, which appears in the header of each page.

4

Ross quickly turned around and placed his hands behind his head to be cuffed, but Hilton and Reinhardt continued punching him in the back of his head, while saying "quit resisting." *Id.* ¶ 8.

Ross fell to the floor, and Hilton began stomping the back of his head. *Id.* ¶ 9. At this point, Ross was "in and out of consciousness." *Id.*

Hilton and Reinhardt handcuffed Ross's hands behind his back, and Hilton placed him in a chokehold. *Id.* at 10 ¶ 10. As Hilton choked Ross, he whispered, "'you fucking Nigger' as he brought up letters of complaints [Ross had] filed against them in the past." *Id.* As Ross "gagged for air and was going in and out of consciousness" inmates could be heard screaming: "Get off him. Get off him." *Id.* "Reinhardt made a humb[le] plea for Hilton to stop, . . . [saying,] you [are] killing him, enough. Stop." *Id.* ¶ 11.

After Hilton released Ross from the chokehold, Hilton and Reinhardt exchanged punches—each hitting the other in the face. *Id.* ¶ 12. Ross was dragged by his cuffs outside the cell, placed on a gurney, and rushed to the facility emergency room. *Id.* ¶¶ 12–13.

While Ross was still cuffed from the back, officer John Doe, who is not a defendant to this lawsuit, pinned him to the exam bed as Williams examined him. *Id.* ¶ 14. Williams directed Busch to tend to the bleeding from Ross's head, eye, and back. *Id.* ¶ 15.

5

Williams then told the officers that he could not send Ross "out to a hospital like this and ordered the officers to take [him] upstairs." *Id.* ¶ 16. There, they placed him in an isolation room, stripped him naked, and left him on the floor. *Id.* "Everything was just spinning for days as [Ross] cried for medical help and assistance[, but] every nurse ignored [him]." *Id.* ¶ 17. Busch assisted Williams in covering up the extent of Ross's injuries. *Id.* at 7 ¶¶ 4–5. They did this by creating a false record of Ross's injuries. *Id.*

Later, Ross was transported to the Special Housing Unit ("SHU"). *Id.* at 10 ¶ 18. While he was in SHU, he and his family called the Office of Special Investigations ("OSI") every day. *Id.* Someone from OSI visited him, took a recorded interview about what happened, and he said he would return to take photographs of Ross's injuries, but he never returned. *Id.*

Muniak wrote a false misbehavior report, and Meegan performed a very biased hearing. *Id.* at 7 ¶¶ 6–7. The misbehavior report was later reversed and expunged from Ross's record. *Id.* at 10 ¶ 16. Pangallo kicked Ross and slammed a locker onto his back. *Id.* at 7 ¶ 3.

Ross asserts violations of the Eighth and Fourteenth Amendments. *Id.* at 3. Mindful of its obligation to construe his allegations to raise the strongest claims they suggest, *see McEachin*, 357 F.3d at 200, the Court interprets his complaint as asserting excessive force and inadequate medical care claims under the Eighth Amendment, procedural due process and equal protection claims under the Fourteenth Amendment, and a retaliation claim under the First Amendment.

III.     **<u>Section 1983 Claims</u>**

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875–76 (2d Cir. 1994)). Section 1983 "creates no substantive rights[, but] provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

A.     **First Amendment: Retaliation**

"It is well-established that prison officials may not retaliate against inmates for exercising their constitutional rights." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002). To plead a claim for retaliation under the First Amendment, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation modified).

"[F]iling . . . formal prisoner grievances is protected conduct under the First Amendment." *Shariff v. Poole*, 689 F. Supp. 2d 470, 478 (W.D.N.Y. 2010). An adverse action is "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."

7

*Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citation modified).  A plaintiff may allege a causal connection with facts showing: "(1) the temporal proximity of the filing to the grievance and the [adverse] action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; [or] (4) statements by the defendant regarding his motive for [the adverse action]." *Shariff*, 689 F. Supp. 2d at 479.

Ross's allegation that Hilton referenced Ross's letters of complaints against the officers while he was beating and choking him, *see* Dkt. 1, at 10 ¶ 10, permits the inference that Hilton beat Ross because Ross had filed grievances.  In other words, the complaint alleges that: Ross engaged in protected conduct when he filed grievances; Hilton took adverse action against Ross by beating and choking him; and Hilton's statements evince a causal connection between Ross filing grievances and Hilton beating and choking him.  Ross's retaliation claim, therefore, will proceed to service upon Hilton.

### B.    Eighth Amendment: Excessive Force

The "core judicial inquiry [for determining whether prison officials have violated the Eighth Amendment by using excessive physical force] is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)).  To assess an Eighth Amendment claim, the Court must consider both the subjective and the objective components of the alleged violations. *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir.

8

1994).  The objective component considers the "seriousness of the injury." *Id.* The subjective component addresses whether the defendant possessed a "wanton" state of mind while engaging in the use of force. *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

At the screening stage, the Court concludes that Ross's excessive force claim is sufficiently pleaded to proceed to service upon Hilton, Reinhardt, and Pangallo.

### C.      Eighth Amendment: Inadequate Medical Care

A claim of inadequate medical care rises to the level of a constitutional violation only where the facts alleged show that the defendant was deliberately indifferent to the plaintiff's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).  A serious medical need "exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

The second, subjective prong element is met when "the official charged with deliberate indifference . . . act[ed] with a 'sufficiently culpable state of mind.'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citing *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)).  That is:

> [a] prison official cannot be found liable under the Eighth Amendment . . . unless [he or she] knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference.

*Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Ross's description of Williams's and Busch's conduct surrounding his medical care presents a colorable claim and will proceed to service.

### D.    Fourteenth Amendment: Equal Protection

To state an equal protection claim, a plaintiff must allege "that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). The facts must show that "discriminatory intent"—based on an impermissible consideration such as race—was a "motivating factor" of the defendant's conduct. *Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 438 (2d Cir. 2009).

Ross's allegation that Hilton whispered, "you fucking Nigger" while holding him a chokehold, *see* Dkt. 1, at 10 ¶ 10, at this stage, permits the inference that race was a motivating factor in Hilton's conduct.  Ross's equal protection claim will proceed to service upon Hilton.

### E.    Fourteenth Amendment: Procedural Due Process

To state a Section 1983 procedural due process claim—*i.e.*, to allege that he was disciplined without adequate due process as a result of the false misbehavior report—Ross must allege facts demonstrating (1) that he possessed a protected liberty or property interest, and (2) that he was deprived of that interest without

constitutionally sufficient due process. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *accord Bangs v. Smith*, 84 F.4th 87, 97 (2d Cir. 2023).

The liberty interest element can be alleged with facts showing that the discipline the plaintiff received imposed an "atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *accord J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013). Such facts may include those describing both the conditions of any disciplinary confinement and their duration because "especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999)).

To allege that he did not receive constitutionally sufficient due process, a plaintiff can include facts showing that he did not receive the process due under *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Wolff* requires that an inmate appearing at a disciplinary hearing must be provided 24 hours' written notice of the charges against him, the right to call witnesses and present documentary evidence, the aid of a staff member or inmate in presenting a defense, an impartial tribunal, and a written statement of the basis for the tribunal's decision. *Id.* at 563–67, 570–71.

Ross's allegations here do not sufficiently plead a procedural due process claim. First, his allegations do not make clear that his time in SHU was atypical. Second, the stand-alone allegation that Meegan performed a very biased hearing, *see* Dkt 1, at 7 ¶ 7, is conclusory and, therefore, not entitled to the presumption of

11

truth, *see Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). But Ross may amend his procedural due process claim to allege facts supporting each of the elements above, if possible.

### F.    Official Capacity

Ross sues Defendants in both their individual and official capacities. Dkt. 1, at 2–4. Unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citation omitted). Because "a judgment against a public servant in his official capacity imposes liability on the entity that he represents[,]" *Graham*, 473 U.S. at 169 (citation modified), this "rule of immunity extends to cases where the action is in essence one for the recovery of money from the state, even when individual [state] officials are the nominal defendants," *Williams v. Marinelli*, 987 F.3d 188, 197 (2d Cir. 2021) (citation modified).

A limited exception to the Eleventh Amendment's grant of sovereign immunity exists when a plaintiff seeks injunctive relief against a state official for an ongoing violation of federal law or the Constitution. *See Graham*, 473 U.S. at 167 n.14 (citing *Ex parte Young*, 209 U.S. 123 (1908)). Such a suit "is not 'one against the State' and, therefore, [is] not barred by the Eleventh Amendment." *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002) (quoting *Ex parte Young*, 209 U.S. at 154).

12

Under the *Young* exception, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff "(1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as prospective." *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020).

Here, Ross seeks monetary damages, effective pain management, and an MRI and/or CT scan. Dkt. 1, at 8. The Eleventh Amendment bars any claims for monetary damages against Defendants in their official capacities. The Court, therefore, dismisses those claims without leave to amend because Ross cannot cure the deficiency through amendment.

To the extent that Ross's requests for relief can be read to allege (1) an ongoing violation of the Eighth Amendment with respect to his medical care, and (2) a request for prospective relief in the form of diagnostic tests and ongoing pain management, the official capacity claims will proceed against Williams and Busch.

## G.    Personal Involvement

To plead liability against an official under Section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, *respondeat superior* liability is not available in a Section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citation modified). Rather,

"a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions[] . . . violated the Constitution." *Id.*

Ross does not allege any facts against Keller. Accordingly, any claims against Keller are dismissed, with leave to amend.

## III.  Leave to Amend

The Court grants Ross leave to amend, as directed above. If he does not submit an amended complaint by **August 3, 2026**, his procedural due process claims against Muniak and Meegan, as well as any claims against Keller, will be dismissed, and Keller, Meegan, and Muniak will be terminated as Defendants without further order of the Court. Any amended complaint will **completely replace** the prior complaint in the action. *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Any amended complaint, therefore, must include all of Ross's allegations and claims, so it may stand alone as the sole complaint that Defendants must answer.

## CONCLUSION

For the above reasons, the claims against Williams and Busch in their official capacities will proceed to service; all other official capacity claims are dismissed, without leave to amend. Ross's retaliation and equal protection claims will proceed to service upon Hilton. His excessive force claim will proceed to service upon Hilton, Reinhardt, and Pangallo. His inadequate medical care claim will proceed to service upon Williams and Busch. Ross's procedural due process claims against Muniak and Meegan, as well as any claims against Keller, are dismissed with leave to amend.

## ORDER

IT HEREBY IS ORDERED that Ross's IFP motion (Dkt. 6) is granted; and it is further

ORDERED that the claims against Williams and Busch in their official capacities will proceed to service; all other official capacity claims are dismissed, without leave to amend.  Ross's retaliation and equal protection claims will proceed to service upon Hilton.  His excessive force claim will proceed to service upon Hilton, Reinhardt, and Pangallo.  His inadequate medical care claim will proceed to service upon Williams and Busch.  Ross's procedural due process claims against Muniak and Meegan, as well as any claims against Keller, are dismissed with leave to amend.; and it is further

ORDERED that Ross is granted leave to file an amended complaint as directed above by **August 3, 2026**; and it is further

ORDERED that the Clerk of the Court shall send to Ross this decision and order, a copy of the original complaint (Dkt. 1), a blank Section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that, if Ross does not file an amended complaint by **August 3, 2026**, his procedural due process claims and any claims against Keller will be dismissed with prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), and Muniak, Meegan, and Keller will be terminated as Defendants without further order; and it is further

15

ORDERED that, if Ross does not file an amended complaint by **August 3, 2026**, the Clerk of Court is directed to cause the United States Marshal to serve copies of the summons, complaint, and this order upon Hilton, Reinhardt, Pangallo, Williams, and Busch (once their full names and service addressed have been provided), without Ross's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Ross's favor; and it is further

ORDERED that, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), the Court requests that the Attorney General's Office ascertain the full names, with correct spelling, and last known service addresses of Hilton, Reinhardt, Pangallo, Williams, and Busch. The Attorney General need not undertake to defend or indemnify these Defendants at this time. Rather, this order provides a means by which Ross may name and properly serve these Defendants, as instructed by the Second Circuit in *Valentin*.

The Attorney General's Office shall produce the information regarding Hilton, Reinhardt, Pangallo, Williams, and Busch by **August 3, 2026**, by forwarding it to the Court's *Pro Se* Unit, United States District Court, 2 Niagara Square, Buffalo, New York 14202. Once the Court receives this information, the Clerk of Court shall update the docket, Ross's operative complaint shall be deemed amended to reflect Hilton, Reinhardt, Pangallo, Williams, and Busch's full names, summonses shall issue, and the Court directs service on Hilton, Reinhardt,

16

Pangallo, Williams, and Busch.[4]  Should the *Valentin* response return personally identifiable information such as a home address, the *Valentin* response shall remain restricted to Court personnel only and that contact information shall be given to the U.S. Marshals Service solely for the purpose of effecting service, and this information otherwise will remain confidential; and it is further

ORDERED that, upon service, pursuant to 42 U.S.C. § 1997e(g), Hilton, Reinhardt, Pangallo, Williams, and Busch shall answer or otherwise respond to the claims proceeding against them; and it is further

ORDERED that the Clerk of Court is directed to forward a copy of this decision and order to Christopher L. Boyd, Assistant Attorney General in Charge, Buffalo Regional Office, at Christopher.Boyd@ag.ny.gov; and it is further

ORDERED that the Clerk of Court shall update the caption to reflect the one in this decision and order; and it is further

ORDERED that, pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Ross must notify the Court in writing if his address changes. Failure to do so may result in dismissal of the action.

Dated:    July 1, 2026
          Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

---

[4] If Ross files an amended complaint as directed in this decision and order, service will be deferred until the Court has screened the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).

17